UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| HALEMA BUZAYAN, an individual; DR. JAMAL BUZAYAN, an individual; NAJAT ABDALLA DARRAT, an individual; MOHAMED BUZAYAN, by and through R. JAMAL BUZAYAN, as Guardian Ad Litem for a minor; YOUSEF BUZAYAN, by and through DR. JAMAL BUZAYAN, as Guardian Ad Litem for a minor; ALI BUZAYAN, by and through DR. JAMAL BUZAYAN, as Guardian Ad Litem, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF DAVIS; JAMES HYDE, individually and in his capacity as Chief of Police of the City of Davis Police Department; STEVEN PIERCE, individually and in his official capacity with the City of Davis Police Department; PHENG LY, individually and in his capacity as an officer of the City of Davis Police Department; BEN HARTZ, individually and as officer of the City of Davis Police Department; DAVID HENDERSON, individually and in his capacity as District Attorney for the Yolo County Office of the District Attorney;; PATRICIA FONG, individually and in her capacity as Deputy District Attorney for the Yolo County Office of the District Attorney and member of the Davis Police Department Advisory Board; DOUGLAS THORN, individually and in his capacity as counsel for Yolo County and the City of Davis, <br><br> Defendants. | No. 2:06-cv-01576-MCE-DAD <br><br><br><br><br><br><br><br><br><br><br> **MEMORANDUM AND ORDER** |

Through the present action, Halema Buzayan and the Buzayan family allege that their constitutional rights were violated as a result of events stemming from hit-and-run charges levied against Halema as a result of an incident which allegedly occurred on June 7, 2005. Defendants City of Davis, James Hyde, the former Davis Chief of Police, and two officers with the City of Davis Police Department, Pheng Ly and Ben Hartz (collectively referred to as "Defendants" unless otherwise noted), now move for partial summary judgment as to the First, Second, Fourth, Fifth, Ninth and Thirteenth Causes of Action contained within Plaintiffs' First Amended Complaint on grounds 1) that probable cause existed for the arrest of Halma Buzayan; 2) that there is no evidence of any discriminatory animus associated with the arrest; and 3) that the individual officers are entitled to qualified immunity in any event with respect to any liability associated with the arrest. As set forth below, Defendants' Motion for Partial Summary Judgment will be denied.

**BACKGROUND**

At approximately 7:40 p.m. on the evening of June 7, 2005, Officer Ly was dispatched by the City of Davis Police Department to the home of Adrienne Wonhof-Gustafson to investigate Mr. Wonhof-Gustafson's claim that her 2001 Mazda Protégé had sustained damage as a result of a hit-and-run collision.
///
///
///

2

Ms. Wonhof-Gustafson told Officer Ly that after shopping at Safeway earlier that evening, she noticed damage to the rear bumper and found a note attached to her windshield from a witness who claimed to have witnessed a collision. According to the note, a blue Toyota Highlander was involved, license plate number 5GXT958. The witness who wrote the note left his name and telephone number.

Officer Ly dialed the number on the note and spoke to a man who identified himself as Marc Rowe. Mr. Rowe stated that he had seen the Highlander back out of a parking spot after pulling in very closely next to Ms. Wonhof-Gustafson's Mazda. Although Mr. Rowe did not profess to have seen any actual collision between the two vehicles, he stated that after the Highlander backed out and parked in a different space he saw scrape marks on the Mazda's bumper near where the Highlander had passed, so believed that an impact had occurred. Mr. Rowe described the Highlander's driver as a "non-white" driver between 17 and 20 years of age. He saw two younger male passengers with the driver.

After running a check on the license plate number provided by Mr. Rowe, Officer Ly discovered that the plate matched a 2004 Toyota registered to Jamal Buzayan and his wife Najat Darrat at 1131 Pistachio Court in Davis. Officer Ly drove to the Buzayan residence and ultimately found Mr. Buzayan at home at about 9:30 p.m. Ly explained that he was investigating a reported hit-and run involving a blue Toyota Highlander, license plate number 5GXT958, which Buzayan confirmed was his vehicle.

///

3

After Mr. Buzayan asked Officer Ly if he wished to examine the vehicle, they went into the garage. The license number of the Highlander parked there matched the number provided by Marc Rowe and had corner damage to the right front/passenger bumper. Ms. Darrat then appeared and, while she admitted driving the Toyota to Safeway several times earlier in the day, denied being at Safeway around 6:30 p.m. when Mr. Rowe observed the alleged incident. Neither Mr. Buzayan or Ms. Darrat had noticed the Toyota's bumper damage previously. Officer Ly took pictures of the damage.

When Officer Ly inquired with respect to any other drivers in the household, he learned that the couple's daughter, sixteen-year-old Halema, had a driver's license. Officer Ly then asked to speak to Halema, who denied driving the Highlander to Safeway that day. Despite this denial, Officer Ly asked Mr. Buzayan and Ms. Darrat to call Ms. Wonhof-Gustafson to discuss responsibility for the incident, and to contact their insurance company. Officer Ly also gave the Buzayans' insurance information to Mr. Wonhof-Gustafson himself when he returned to talk with her after discussing the matter with the Buzayans.

Ms. Wonhof-Gustafson admits that a member of the Buzayan family called her shortly thereafter and agreed to pay for the Mazda's damage. An insurance representative prepared an estimate and, according to Ms. Wonhof-Gustafson, she received a check covering the necessary repairs, in full, within three days after the incident. See Decl. of Adrienne Wonhof-Gustafson, ¶ 7.

///

///

4

Ms. Wonhof-Gustafson further maintains that she told Officer Ly the evening of the accident she had no interest in pressing charges as long as she was reimbursed for the damage to her vehicle.

When Officer Ly returned to talk to Marc Rowe a second time, he showed Rowe a photo lineup which included Halema's photo. Mr. Rowe identified Halema as the driver of the Highlander, but his girlfriend, Carly Collins, could not make a positive identification despite having also been present in the Safeway parking lot when the purported incident occurred. Mr. Collins did describe the driver as a "Middle Eastern" female about 17 years old with wavy, dark shoulder length hair. Collins told Officer Ly that the girl had looked at the Mazda as she walked past it after parking the Highlander.

According to Officer Ly, as a result of this investigation, which all appears to have occurred the evening of the incident, he concluded that Halema Buzayan had likely been driving the Highlander and collided with the Wonhof-Gustafson Mazda on June 7, 2005. Officer Ly did not arrest Halema, however, until almost a week later, on June 13, 2005, when he returned to the Buzayan/Darrat home at about 9:40 p.m with Officer Hartz and transported Halema to the Davis Police Station for booking, fingerprinting and questioning before releasing her to her parents with a Notice to Appear. Halema's arrest was effectuated without any warrant.

///
///
///

On July 14, 2006, Ms. Buzayan, through her father as Guardian Ad Litem, filed suit against Defendants, alleging seventeen causes of action. The Defendants filed a Partial Motion to Dismiss under Rules 12(b)(6) and 12(b)(7) and a Partial Motion to Strike under Rule 12(f) and California Code of Civil Procedure § 425.16. Since Ms. Buzayan had reached the age of majority prior to filing the suit, the Court granted Defendants' Motion to Dismiss under Rule 12(b)(7), and granted Plaintiff leave to amend the complaint.

On November 3, 2006, Plaintiffs filed an amended complaint which substituted Ms. Buzayan as an individual, and added the additional members of the Buzayan family as Plaintiffs. The First Amended Complaint also added the Davis Enterprise, Debbie Davis, Lauren Keene, the City of Davis, and individuals from the Yolo County Office of the District Attorney as Defendants, and included additional causes of action. As a result of Special Motions to Strike and Partial Motions to Dismiss filed in early 2007, the media defendants (the Davis Enterprise, Debbie Davis and Lauren Keene) were dismissed along with three causes of action. After Defendants filed a Motion for Judgment on the Pleadings directed to remaining claims in late 2007, Plaintiffs sought and received permission from the Court on December 14, 2007 to file a Second Amended Complaint. As a result, the Motion for Judgment on the Pleadings was taken off calendar.

///
///
///
///

Plaintiffs' Second Amended Complaint, filed on or about January 3, 2008, omitted four additional causes of action set forth in its predecessor. Defendants again moved to dismiss certain causes of action, and were successful in eliminating three causes of action in their entirety, and another five on a partial basis. In addition, Defendant Douglas Thorne was dismissed as a Defendant.

On September 25, 2009, Defendants filed the present Motion for Partial Summary Judgment, alleging that because probable cause existed for Halema's arrest, all causes of action whose merit depended on the lack of such probable cause[1] necessarily fail. Additionally, because Defendants also claim the evidence shows no evidence of any discrimination against Halema Buzayan in connection with her arrest, they request summary adjudication as the Second and Fourth Causes of Action. Those claims are brought under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment's Equal Protection Clause in arresting Halema on the basis of her Muslim faith and/or Middle Eastern ethnicity.

///
///
///

---

[1] Those causes of action include the First Cause of Action, against Defendants under 42 U.S.C. § 1983 for unlawful seizure in contravention of the Fourth Amendment, the Ninth Cause of Action, against Defendants for false imprisonment under state law, the Thirteenth Cause of Action, against Defendants City of Davis Hyde for so-called Monell liability under 42 U.S.C. § 1983 given their alleged ratification of Halema Buzayan's unreasonable seizure by Defendants Hartz and Ly, and the Fifth Cause of Action, for conspiracy to deny constitutional rights in violation of 42 U.S.C. §§ 1985(3) and 1983, to the extent such claim is based on Halema's arrest.

Finally, with respect to Defendants Ly and Hartz, Defendants' Motion asserts that said Defendants are entitled to qualified immunity in any event because they reasonably believed they had good cause to effectuate Halema's arrest.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant partial summary judgment, or summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim...may...move...for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

///
///
///
///

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts....Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///
///
///
///
///
///

**ANALYSIS**

**A. Whether or Not Defendants Had Probable Cause to Arrest Halema Buzayan Requires Factual Determinations Not Amenable to Disposition on Summary Judgment.**

Defendants contend that because probable cause existed for Halema's arrest, her rights under the Fourth Amendment for freedom from unreasonable seizures cannot have been violated. Even in the absence of a search warrant, an officer may still validly arrest a suspect if the officer has probable cause to believe the person committed a crime. Tatum v. City & County of San Francisco, 441 F.3d 901, 906 (9th Cir. 2002). Probable cause exists if, at the time of arrest, the facts and circumstances known to the officer through reasonably trustworthy information suggested a fair probability that a crime has been committed. Hunter v. Bryant, 502 U.S. 224, 228 (1991; Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007). The determination of probable cause, then looks to whether the totality of circumstances points to a likelihood that criminal activity has taken place.

The factual nature of this inquiry, as suggested by the need to weigh evidence in determining whether the scales tip towards probable cause, militates against a determination of probable cause as a matter of law, on summary judgment, in all but the clearest cases. After examining the evidence here, the Court concludes that the present matter is not such a case.

///
///
///

First, it is uncontroverted that the alleged eyewitness, Marc Rowe, did not in fact observe actual contact between the Highlander and Mr. Wonhof-Gustafson's Mazda. That failure made it all the more necessary to carefully examine the damage sustained between the two vehicles before drawing any conclusion that the Highlander had in fact collided with the Mazda.

In Opposition to Defendants' Motion, Plaintiffs have introduced a report prepared by a Consulting Mechanical Engineer, Albert J. Ferrari, following his review of the damage to the Buzayan Highlander in connection with an exemplar 2001 Mazda Protégé. (See Report, Ex. I to the Decl. of Matt Springman in Opp'n to Mot. Summ. J.).[2] Mr. Ferrari also reviewed the police report, photographs of the involved vehicles, and a collision repair report. He concluded that the damage to the Toyota did not match damage sustained by the Mazda, opining that the areas of bumper and right front damage to each vehicle are inconsistent both with respect to "location, elevation, severity, size, shape and transferred paint." Id. at p. 2.

Given these opinions, the reasonableness of Officer Ly's opinion that a collision had taken place between the two vehicles is brought into question, particularly given the fact that the witness had not seen any actual contact between the Mazda and Toyota. That assessment therefore becomes a factual determination not amenable to determination on summary judgment.

///
///

---

[2] Defendants' Objections to the Ferrari report are overruled.

12

The factual issues raised by Plaintiffs' expert report showing that the damage to the two vehicles did not match, particularly when coupled with the lack of any eyewitness to an actual collision, are further compounded by the photo lineup prepared by Officer Ly that identified Halema as the driver of the Highlander in the first place. Plaintiffs point to defects in the composition of the lineup given the sharp contrast between Halema's smiling demeanor and the demeanor of the other included individuals. Moreover, even given that discrepancy, Plaintiffs correctly point out that only one of the two witnesses who observed the driver of the Highlander in the Safeway parking lot (Marc Rowe) were able to affirmatively identify Halema Buzayan as the driver.

Defendants' request for summary adjudication as to all claims premised on the lack of probable cause to arrest Halema (the First, Fifth, Ninth and Thirteenth Causes of Action) must accordingly be denied.[3]

///
///
///
///

---

[3] The Court recognizes that Plaintiffs also devoted substantial time in their Opposition to the argument that Officer Ly's warrantless arrest of Halema, as a juvenile, was improper. Those arguments with respect to the mode of arrest, however, are not pertinent with respect to whether probable cause existed to make the arrest in the first place. Moreover, and in any event, California Welfare and Institutions Code § 625(a) allows an officer, without a warrant, to take a minor into temporary custody. As the Court already determined in its previous September 29, 2008 Memorandum and Order in this matter (Docket No. 131, p. 15), Halema was released after her booking and therefore comes within the purview of § 625(a).

**B. Plaintiffs' Equal Protection Claims Also Cannot be Decided as a Matter of Law.**

In addition to maintaining that the existence of probable cause nullifies much of Plaintiffs' Second Amended Complaint, Defendants also contend that there is no evidence from which any discriminatory inference in arresting Halema can be drawn. Given the totality of circumstances, that argument also fails.

The Equal Protection Clause of the Fourteenth Amendment, which underlies Halema's discrimination claims founded on violations of 42 U.S.C. § 1983, does prohibit selective enforcement of laws against an individual on the basis of his or her race or religion. In order to prevail on her Equal Protection claims, Plaintiff must show that Defendants' actions against her were motivated by a discriminatory purpose and had a discriminatory effect. Rosenbaum v. City & County of San Francisco, 484 F.3d 1142, 1152 (9th Cir. 2007).

The Court finds that Plaintiff has pointed to enough discrepancies to meet her burden, at least for purposes of summary judgment. According to Ms. Wonhof-Gustafson, Officer Ly went out of his way to describe Halema's mother's use of a traditional Muslim dress that "covered her face." Wonhof-Gustafson Decl., ¶ 5. This description is at odds with other evidence suggesting that Ms. Darrat was simply wearing a headscarf, as opposed to something covering her head entirely.

///
///
///
///

14

Although Ly may have been trying to distinguish Ms. Darrat's apparel from that of her daughter, who was not wearing a headscarf at the time of his interview, and from the individual observed by Marc Rowe and Carly Collins, who was also not reported as having her head covered, there is evidence suggesting that Ly went on to make certain assumptions about the use of a headscarf during his handling of this matter. When he was questioning Halema at the police station following her arrest, he opined that Ms. Darrat could not have been the driver because the individual identified by the witnesses was not wearing a headscarf and wearing blue jeans, something that Ms. Darrat, as a "very traditional person", would not have done. See Ex. H to Springman Decl. (audio recording of Ly's interrogation of Halema Buzayan).

Case law shows that assumptions of fact based on a suspect's ethnicity may preclude summary judgment. See, e.g., Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1169-70 (10th Cir. 2003) (an officer's unsupported evidence that an African-American detainee was under the influence of crack, as opposed to another drug, may be evidence of racial discrimination). Here, Officer Ly's assumptions about Muslim dress may similarly be evidence of bias, particularly when viewed in conjunction with other apparent irregularities surrounding Halema's arrest.

///
///
///
///
///

Additionally, as discussed above, despite the fact that no witness observed any actual contact between the two vehicles, there is no evidence that Officer Ly performed any analysis after taking pictures of the two vehicles the evening of the incident and before deciding to arrest Halema some six days later.[4] Albert Ferrari's opinion that the damage sustained by the two vehicles was highly inconsistent with a collision, as discussed above, makes that decision appear imprudent. Moreover, at least according to Ms. Wonhof-Gustafson, Officer Ly seemed "overly zealous" to press charges against Ms. Buzayan, even in response to Wonhof-Gustafson's desire not do so so if she was reimbursed. Wonhof-Gustafson Decl., ¶¶ 5-6.[5] He did not indicate Ms. Wonhof-Gustafson's preference in that regard when preparing the police report. Nor is there any evidence that he checked back with Ms. Wonhof-Gustafson to see whether reimbursement had been made before deciding to effectuate the arrest, despite her confirmation that full reimbursement was received within three days of the incident. Id. at ¶ 7.

///
///

---

[4] Troubling too is the fact that while Officer Ly told the Buzayans that Marc Rowe had seen an actual collision (Springman Decl., Ex. E), he later admitted at deposition that Mr. Rowe had not made any such representation. Springman Decl., Ex. A, 56:12-14.

[5] Defendants' objection to Ms. Wonhof-Gustafson's characterization in this regard is overruled. Moreover, while Defendants further object to other portions of the Wonhof-Gustafson Declaration, as well as other evidence proffered in opposition to Defendants' Motion, to the extent the Court has not relied on such matters in ruling on the Motion, it is unnecessary to specifically rule on Defendants' Objections in their entirety and the court declines to do so.

16

1 | Even more significant is evidence that the Yolo County
2 | District Attorney's Office does not normally pursue charges for
3 | hit-and-run misdemeanors where the alleged victim has been
4 | compensated and does not wish to pursue charges. Springman
5 | Decl., Ex. B, Dep. of David Henderson, pp. 42-44.

The timing and manner of Halema's arrest also raises questions. Officer Ly waited six days after apparently performing no investigation in the meantime, and then arrested sixteen-year old Halema at approximately 9:30 p.m., apparently after she had gone to bed. He refused to let her change out of her pajamas before taking her to the police station for booking. Decl. of Jamal Buzayan, ¶¶ 15-16. Additionally, although California Penal Code § 844 requires that a police officer seeking admission into a private home to explain the purpose for which admittance is desired, Ly told Halema's father only that he wanted to "talk" with her, despite the fact that he had already decided to make an arrest. Id. at ¶ 12; Springman Decl., Ex. A, Dep. of Pheng Ly, pp. 120-21.

On a motion for summary judgment, as stated above, all reasonable inferences must be drawn in favor of the party opposing summary judgment, here Plaintiffs. Anderson, 477 U.S. at 255. Taken together, the series of events outlined above may support an inference of discrimination. This is enough to defeat summary judgment. Defendants' request for summary adjudication as to the Second and Fourth Causes of Action are therefore denied.

///
///

**C. Defendants Ly and Hartz are Not Entitled to Qualified Immunity as to any Probable Cause Under the Circumstances of this Matter.**

Defendants Ly and Hartz argue that even if probable cause was lacking, they are still entitled to qualified immunity as to the Fourth Amendment seizure claim, "because any reasonable officer viewing the same facts and circumstances could have reached the same decision to arrest [Halema]." Defs.' Mem. in Support of Summ. J., 12:19-23.

Government officials like Defendants Ly and Hartz are entitled to qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Under the analysis prescribed by Saucier v. Katz, 533 U.S. 194, 201 (2001), the initial inquiry in assessing immunity goes to whether the Defendants violated a constitutional right of the plaintiff, here Halema. If such a violation is shown, the Court must next look to whether the law governing Defendants' conduct is clearly established, and whether under that law a reasonable official would have believed his conduct was lawful. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001).

The facts here do not permit the Court to resolve these inquiries in favor of Defendants. As discussed above, Officer Ly made the decision to arrest Halema without a witness who even observed a collision, and in reliance on damage comparison between the vehicles that Defendants' expert later found to be patently mismatched.

Moreover, Defendants made the arrest in the face of evidence suggesting that misdemeanor hit-and-run incidents where reimbursement has been made are not ordinarily prosecuted, despite the wishes of the alleged victim who did not wish to pursue charges given her reimbursement for all damages, and in a manner which may not have complied with California law as set forth in Welfare and Institutions Code § 844. Given all those circumstances, the Court concludes that qualified immunity is inappropriate.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment (Docket No. 175) is DENIED.[6]

IT IS SO ORDERED.

Dated: February 25, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[6] Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument. E.D. Local Rule 230(g).

19