UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HALEMA BUZAYAN, an individual;
DR. JAMAL BUZAYAN, an
individual; NAJAT ABDALLA
DARRAT, an individual; MOHAMED
BUZAYAN, by and through
R. JAMAL BUZAYAN, as Guardian
Ad Litem for a minor; YOUSEF
BUZAYAN, by and through DR.
JAMAL BUZAYAN, as Guardian Ad
Litem for a minor; ALI
BUZAYAN, by and through DR.
JAMAL BUZAYAN, as Guardian Ad
Litem for a minor,

        Plaintiffs,

  v.

THE CITY OF DAVIS; JAMES HYDE,
individually and in his
capacity as Chief of Police of
the City of Davis Police
Department; STEVEN PIERCE,
individually and in his
official capacity with the
City of Davis Police
Department; PHENG LY,
individually and in his
capacity as an officer of the
City of Davis Police
Department; BEN HARTZ,
individually and as officer of
the City of Davis Police
Department; DAVID HENDERSON,
individually and in his

No. 2:06-cv-01576-MCE-DAD

**MEMORANDUM AND ORDER**

capacity as District Attorney for the Yolo County Office of the District Attorney;
PATRICIA FONG, individually and in her capacity as Deputy District Attorney for the Yolo County Office of the District Attorney and member of the Davis Police Department Advisory Board,

        Defendants.

----oo0oo----

Through the present action, Halema Buzayan and the Buzayan family allege that their constitutional rights were violated as a result of events stemming from hit-and-run charges levied against Halema as a result of an incident which allegedly occurred on June 7, 2005. Defendants City of Davis, James Hyde, the former Davis Chief of Police, and two officers with the City of Davis Police Department, Pheng Ly and Ben Hartz, along with Yolo County District Attorney David Henderson and Deputy District Attorney Patricia Fong (collectively referred to as "Defendants" unless otherwise noted), now move for partial summary judgment as to the Fifth and Sixth Causes of Action contained within Plaintiffs' First Amended Complaint on grounds, <u>inter</u> <u>alia</u>, that there is no evidence of a conspiracy to violate Plaintiffs' constitutional rights as required said causes of action, which are predicated on claims that Defendants conspired together to pursue criminal charges against Plaintiff Halema Buzayan for exercising her constitutional rights, or, alternatively, to retaliate against Plaintiffs for complaining about the allegedly discriminatory treatment they were subjected to on the basis of their race/ethnicity/religion.

2

As set forth below, Defendants' Motion for Partial Summary Judgment will be granted.

**BACKGROUND**

The facts of this matter have already been discussed at length in prior rulings made by the Court. At approximately 7:40 p.m. on the evening of June 7, 2005, Officer Ly was dispatched by the City of Davis Police Department to the home of Adrienne Wonhof-Gustafson to investigate Ms. Wonhof-Gustafson's claim that her 2001 Mazda Protégé had sustained damage as a result of a hit-and-run collision. Ms. Wonhof-Gustafson told Officer Ly that after shopping at Safeway earlier that evening, she noticed damage to the rear bumper and found a note attached to her windshield from a witness who claimed to have witnessed a collision. According to the note, a blue Toyota Highlander was involved, license plate number 5GXT958. The witness who wrote the note left his name and telephone number.

After running a check on the license plate number provided by the witness Rowe, Officer Ly discovered that the plate matched a 2004 Toyota registered to Jamal Buzayan and his wife Najat Darrat at 1131 Pistachio Court in Davis. Officer Ly drove to the Buzayan residence and ultimately found Mr. Buzayan at home at about 9:30 p.m. Ly explained that he was investigating a reported hit-and-run involving a blue Toyota Highlander, license plate number 5GXT958, which Buzayan confirmed was his vehicle. After Mr. Buzayan asked Officer Ly if he wished to examine the vehicle, they went into the garage.

1  The license number of the Highlander parked there matched the
2  number provided by the witness and had corner damage to the right
3  front/passenger bumper.  Ms. Darrat then appeared and, while she
4  admitted driving the Toyota to Safeway several times earlier in
5  the day, denied being at Safeway around 6:30 p.m. when the
6  witness observed the alleged incident.  Neither Mr. Buzayan or
7  Ms. Darrat had noticed the Toyota's bumper damage previously.
8  Officer Ly took pictures of the damage.
9       When Officer Ly inquired with respect to any other drivers
10 in the household, he learned that the couple's daughter,
11 sixteen-year-old Halema, had a driver's license.  Officer Ly then
12 asked to speak to Halema, who denied driving the Highlander to
13 Safeway that day.
14      According to Officer Ly, as a result of this investigation,
15 which all appears to have occurred the evening of the incident,
16 he concluded that Halema Buzayan had likely been driving the
17 Highlander and collided with the Wonhof-Gustafson Mazda on
18 June 7, 2005.  Officer Ly did not arrest Halema, however, until
19 almost a week later, on June 13, 2005, when he returned to the
20 Buzayan/Darrat home at about 9:40 p.m with Officer Hartz and
21 transported Halema to the Davis Police Station for booking,
22 fingerprinting and questioning before releasing her to her
23 parents with a Notice to Appear.  Halema's arrest was effectuated
24 without any warrant.
25 ///
26 ///
27 ///
28 ///

4

1    In October of 2005, during the course of what Plaintiffs
2 believed was supposed to be a conciliatory meeting between
3 Plaintiffs, their former counsel, Etan Rosen, and attorney
4 Douglas Thorne representing the City of Davis and the Davis
5 Police Department, Plaintiffs claim that Thorne was in fact
6 "rude, antagonistic, threatening, and aggressive in tone."  Decl.
7 of Jamal Buzayan, ¶ 4; Decl. of Etan Rosen, ¶ 2.  Among other
8 untoward comments, Thorne allegedly told Plaintiffs that "we are
9 going to teach you a lesson in confrontation."
10   Despite this alleged threat, the Deputy District Attorney
11 ultimately assigned to the case, Patricia Fong, stated she never
12 spoke to Thorne or anyone else before filing misdemeanor criminal
13 charges against Halema Buzayan on or about November 18, 2005.
14 Fong Dep., 23:18-23, Ex. 2 to the Whitesides Reply Decl.; see
15 also Decl. of Patricia Fong, ¶ 2 ("I was the attorney who made
16 the decision to prosecute HALEMA BUZAYAN.... I did not
17 communicate with any CITY OF DAVIS employee or official
18 concerning the arrest or whether to prosecute Ms. BUZAYAN  prior
19 to filing the juvenile petition on November 18, 2005").
20 Moreover, and significantly, Fong goes on to state that she was
21 unaware of Halema's religious beliefs (Muslim), her ethnicity
22 (Libyan), or whether she had submitted a tort claim against the
23 City of Davis, prior to Fong's initiation of charges.
24 Importantly, too, the only time Fong ever spoke to Douglas Thorne
25 was during a phone conversation that occurred on March 13, 2006,
26 months after the charges were filed and well after the
27 October 25, 2005 meeting objected to by Plaintiffs.  Fong Dep. at
28 38:1-40:3; 41:24-43:16.

1    During the pendency of the criminal charges against Halema
2 Buzayan, there is no evidence of anything other than relatively
3 routine investigative contact between Fong, on the one hand, and
4 City representatives, on the other.  See Defs.' Reply, pp. 3-4.[1]
5 Defendants argue there is nothing about those communications that
6 "even remotely connote[s] a mutual intent/plan to discriminate on
7 the basis of religion or ethnicity."  Id. at 4.  Indeed, as
8 Defendants point out, the criminal case was almost six months old
9 before she had any communication at all with the City about the
10 case.  Id.

11    On April 17, 2006, the Yolo County Superior court granted a
12 motion to dismiss the claim against Halema on grounds that the
13 vehicle damage at issue had already been paid for by Plaintiffs,
14 and because the City generally did not pursue criminal charges
15 where such compensation had occurred.  Thereafter, on July 14,
16 2006, Ms. Buzayan, through her father as Guardian Ad Litem, filed
17 suit against Defendants, alleging seventeen causes of action.
18 The Defendants filed a Partial Motion to Dismiss under Rules
19 12(b)(6) and 12(b)(7) and a Partial Motion to Strike under Rule
20 12(f) and California Code of Civil Procedure § 425.16.  Since
21 Ms. Buzayan had reached the age of majority prior to filing the
22 suit, the Court granted Defendants' Motion to Dismiss under Rule
23 12(b)(7), and granted Plaintiffs leave to amend the complaint.

---

[1] With respect to District Attorney David Henderson, it appears uncontroverted that Henderson had no contact whatsoever with City representatives until after he was named as a Defendant in this suit.  Consequently, as Defendants point out, with respect to any conspiracy between the City Defendants on the one hand and the County Defendants on the other, the only salient communications would appear to be those involving Ms. Fong.

On November 3, 2006, Plaintiffs filed an amended complaint which substituted Ms. Buzayan as an individual, and added the additional members of the Buzayan family as Plaintiffs. After Defendants filed a Motion for Judgment on the Pleadings directed to remaining claims in late 2007, Plaintiffs sought and received permission from the Court on December 14, 2007, to file a Second Amended Complaint. As a result, the Motion for Judgment on the Pleadings was taken off calendar.

Plaintiffs' Second Amended Complaint, filed on or about January 3, 2008, omitted four additional causes of action set forth in its predecessor. Defendants again moved to dismiss certain causes of action and were successful in eliminating three causes of action in their entirety and another five on a partial basis. In addition, Defendant Douglas Thorne was dismissed as a Defendant.

On September 25, 2009, Defendants filed a Motion for Partial Summary Judgment, alleging that because probable cause existed for Halema's arrest, all causes of action whose merit depended on the lack of such probable cause[2] necessarily fail.

///
///

---

[2] Those causes of action included the First Cause of Action against Defendants under 42 U.S.C. § 1983 for unlawful seizure in contravention of the Fourth Amendment, the Ninth Cause of Action against Defendants for false imprisonment under state law, the Thirteenth Cause of Action against Defendants City of Davis Hyde for so-called Monell liability under 42 U.S.C. § 1983, given their alleged ratification of Halema Buzayan's unreasonable seizure by Defendants Hartz and Ly, and the Fifth Cause of Action for conspiracy to deny constitutional rights in violation of 42 U.S.C. §§ 1985(3) and 1983, to the extent such claim is based on Halema's arrest.

7

Additionally, because Defendants also claimed the evidence shows no evidence of any discrimination against Halema Buzayan in connection with her arrest, they requested summary adjudication as the Second and Fourth Causes of Action.  Those claims are brought under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment's Equal Protection Clause in arresting Halema on the basis of her Muslim faith and/or Middle Eastern ethnicity.  Finally, with respect to Defendants Ly and Hartz, Defendants' Motion asserts that said Defendants are entitled to qualified immunity in any event because they reasonably believed they had good cause to effectuate Halema's arrest.

By Memorandum and Order filed February 25, 2010, the Court denied Defendants' Motion for Partial Summary Judgment, finding 1) that the issue of whether probable cause existed to arrest Halema Buzayan presented factual issues not amenable to determination on summary judgment; 2) that whether Halema's arrest was motivated by discriminatory animus similarly raised triable issues; and 3) that Defendants Ly and Hartz were not entitled to qualified immunity in deciding to arrest Halema.

Defendants Ly and Hartz filed an interlocutory appeal as to the issue of qualified immunity, and by a Memorandum opinion filed May 4, 2011, the Ninth Circuit reversed this Court as to its denial of qualified immunity to Ly and Hartz but did not otherwise address or disturb the Court's remaining findings as to Plaintiffs' Fourth Amendment or equal protection claims.

///
///
///

On May 26, 2011, Defendants filed their second Motion for Partial Summary Judgment in this matter, and that Motion is now before the Court for adjudication.  As stated above, the present Motion challenges only two of Plaintiffs' claims: the Fifth Cause of Action for Conspiracy to Deny Constitutional Rights, in violation of 42 U.S.C. §§ 1983 and 1985(3), and the Sixth Cause of Action for Conspiracy to Obstruct Due Course of Justice, in Violation of 42 U.S.C. § 1985(2).

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant partial summary judgment, or summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim... may... move... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///
///
///
///
///
///

11

**ANALYSIS**

A conspiracy claim based on 42 U.S.C. § 1983 not only requires proof of "an agreement or meeting of the minds to violate constitutional rights" (Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) but also an actual deprivation of such rights (Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006).  Therefore, to state a viable claim of conspiracy under § 1983, a plaintiff must specifically allege and prove facts showing an agreement to violate his civil rights, including which defendants conspired, how they conspired and how the conspiracy deprived plaintiff of his constitutional rights.  See, e.g., Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997).  Section 1985(3), in authorizing a civil remedy for a conspiracy between two or more persons to deprive others of certain civil rights, obviously depends on a predicate § 1983 violation having occurred.

Plaintiffs' third and final conspiracy-based claim, which alleges a violation of 42 U.S.C. § 1985(2), provides a civil remedy for conspiracy in two ways.  First, it prohibits a conspiracy to "deter by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying.... therein."  Second, the statute prohibits any conspiracy to impede or obstruct "the due course of justice in any State or territory, with intent to deny to any citizen the equal protection of the laws....."

///
///
///

Case 2:06-cv-01576-MCE-DAD   Document 241   Filed 02/23/12   Page 13 of 19

Claims under the first clause of § 1985(2) require a denial of access to the federal courts regarding a pending proceeding, while claims falling within the latter portion of the statute additionally require a showing of class-based animus. <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 908-09 (9th Cir. 1993).

To obtain summary judgment in a conspiracy case, a defendant is not required to produce evidence negating the existence of a conspiracy or resulting constitutional deprivation; instead, the defendant need only point to the absence of facts supporting the plaintiff's case which, in turn, shifts the burden to the plaintiff to produce "concrete evidence" that the moving party was part of the alleged conspiracy. <u>United Steelworkers of America v. Phelps Dodge,</u> 865 F.2d 1539, 1542-43 (9th Cir 1989) (en banc). It is not enough to simply show that a wrong occurred in which multiple parties were involved without any evidence of an agreement between them. <u>Margolis v. Ryan</u>, 140 F.3d 850, 853 (9th Cir. 1998). The mere fact that parties cooperated on a law enforcement objection like prosecution is not, in itself, sufficient to show the requisite conspiracy. <u>See</u>, <u>e.g.</u>, <u>Crowe v. County of San Diego</u>, 608 F.3d 406, 440-41 (9th Cir. 2010 (agreement to prosecute insufficient unless there is also evidence that prosecution was designed to be a sham). Instead, a plaintiff must show a causal relationship between defendant's acts in furtherance of the conspiracy and the constitutional violation that ensued. <u>See</u> <u>Avalos v. Baca</u>, 596 F.3d 583, 592 (9th Cir. 2010) (plaintiff must show both agreement and that the agreement forming the conspiracy resulted in actual deprivation of civil rights).

With these general principles in mind, we turn to the specific claims advanced by Plaintiffs in this case.

**A.  Equal Protection.**

The Equal Protection Clause of the Fourteenth Amendment, which is cited as underlying all the conspiracy claims advanced in Plaintiffs' SAC, prohibits selective enforcement of laws against an individual on the basis of his or her race, ethnicity or religion.  In order to prevail on her Equal Protection claims, it is well established Plaintiffs must show that Defendants' actions were motivated by a discriminatory purpose and had a discriminatory effect.  Rosenbaum v. City & County of San Francisco, 484 F.3d 1142, 1152 (9th Cir. 2007).

Although the Court previously found that triable issues of fact had been raised with respect to potential discrimination in the course of Halema Buzayan's arrest, the conspiracy claims now targeted by Defendants for summary adjudication rest not on the circumstances surrounding her arrest but, instead, on the prosecution that ensued and on allegations that Defendants conspired together 1) to pursue unjustified criminal charges against Halema based on her "race, ethnicity, color and religious beliefs" (SAC, Fifth Cause of Action, ¶ 144); and 2) to retaliate against Plaintiffs for pursuing civil rights claims based on the same discriminatory reasons.  Id. at ¶ 149.

///
///
///

Despite the SAC's sweeping reference to "race, ethnicity, color and religious beliefs," the only supporting factual allegations contained within the SAC refer to Plaintiffs' religious status as Muslims. Consequently, in order to state a viable claim for conspiracy against Plaintiffs because of their Muslim faith, Plaintiffs must produce some evidence not only of a conspiracy but also of a conspiracy grounded on anti-Muslim bias. Plaintiffs have failed to meet that burden.

To demonstrate a conspiracy between the City defendants on the one hand (the Davis Police Department and its officers) and the County Defendants on the other (Yolo County District Attorney Henderson along with Deputy DA Fong), Plaintiffs must accordingly show some concerted action between representatives of the two groups. Although Plaintiffs rely heavily on an October 26, 2005 meeting between them and attorney Douglas Thorne, representing the City, in which Thorne allegedly made threatening remarks about "teaching Plaintiffs a lesson in confrontation," absent is any evidence of a resulting conspiracy between anyone at the City and personnel in the DA's office to deprive Plaintiffs of their constitutional rights based on religious animus.[3]

///

---

[3] Plaintiffs' own complaint appears to belie any claim that Defendants were motivated to conspire against her because she was a Muslim. To the contrary, the facts set forth in the SAC suggest that the motivation for pursuing charges against Halema was instead political and economic -- to leverage abandonment of Plaintiffs' tort claim and to avoid "greater police oversight in Davis. SAC, ¶¶ 101-02. Such financial or political animus is insufficient for Section 1985(3) liability. United Bd. Of Carpenters and Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 838 (1983); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1537 (9th Cir. 1992).

15

As indicated above, Patricia Fong had no knowledge of Halema Buzayan's religious beliefs or ethnicity at the time she made the decision to press charges.  Neither did Fong know about any tort claim against the City at the time the charges were instituted. In fact, Fong had no communication with anyone associated with the City until some six months after the criminal case was filed. She spoke with Douglas Thorne only once by telephone, and that conversation occurred months after the allegedly contentious meeting he had with Plaintiffs in October of 2005.[4]

Plaintiffs offer nothing to rebut this version of events. The fact that Fong may have considered the pending civil claim when she resisted dismissing the civil claim does not establish a conspiracy.  It should initially be pointed out there is no evidence that any other Defendant communicated with her about this in order to qualify as a potential conspiracy in the first place.  Even more importantly, a prosecutor like Ms. Fong is not generally prohibited from seeking a waiver of any civil claim as part of a criminal dismissal agreement in any event. See, e.g., Town of Newton v. Rumery, 480 U.S. 386, 394 (1987).  Finally, while Plaintiffs point to an alleged conspiracy to release confidential information concerning Plaintiffs after criminal charges against Halema had been dropped, they have presented no facts to support a conspiracy in that regard between Fong and the City defendants, let alone any facts suggesting that such disclosure was motivated by Plaintiffs' religious affiliation.

---

[4] In addition, as stated above, any remaining contacts between Fong and the City defendants, as identified by Plaintiffs, appear to encompass routine investigatory concerns and do not in themselves suggest any religious animus.

16

In sum, then, the conspiracy claims set forth in Plaintiffs' Fifth and Sixth Causes of Action fail to the extent they are predicated on equal protection, and Defendants are entitled to summary adjudication of those claims in their favor.

**B.   Other Constitutional Claims.**

While Plaintiffs' SAC also refers to alleged constitutional violations apart from equal protection, Plaintiffs' allegations of excessive force and constitutional privacy have already been dismissed pursuant to the Court's Memorandum and Order filed September 29, 2008 (ECF No. 131). In opposition to Defendants' motion, plaintiffs for the first time appear to invoke the First Amendment as another subject of potential constitutional deprivation. They argue Plaintiffs were retaliated against for "having exercised their right to petition the government for redress for defendants' actions," and go on to say that Defendants "attempted to deter plaintiffs from pursuing their civil rights claims and speaking out..." Opp'n, 9:3-6, 12-14. Nowhere in Plaintiffs' SAC, however, is any claim for relief based on the First Amendment. A party may not defeat summary judgment by asserting unpled theories of recovery. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291-92 (9th Cir. 2000) (plaintiff could not defeat summary judgment by way of unpled disparate impact theory).

///
///
///

In addition, to the extent Plaintiffs appear to cite state law causes of action, like common law privacy, as opposed to constitutionally rooted claims to support their conspiracy claims, that too is unavailing. "To state a claim for relief based on an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). Thus a claim for violation of state law is not cognizable under § 1983.

That leaves only due process as a remaining potential predicate for Plaintiffs' conspiracy claim. While Plaintiffs ostensibly refer to a due process violation in their SAC, they do nothing to flush out that claim either by way of a separate claim or even by specific allegation. To the extent they may equate a due process violation with an actionable § 1985(2) claim, that argument fails. The first portion of that statute refers to denial of access to the federal courts regarding a pending proceeding. Here, the only federal proceeding is the present lawsuit, and there is no allegation that Plaintiffs' access to this Court has in any way been impaired by Defendants' actions. The second clause of § 1985(2), as stated above, refers to activities designed to impede or obstruct a plaintiff's access to "the due course of justice in any State or territory," but as stated above, any abrogation in that regard requires a showing of class-based animus, a burden this Court has already decided has not been met in this matter.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment (Docket No. 216) is GRANTED.[5] Plaintiffs have not met their burden of proof in establishing "concrete evidence" concerning an actionable conspiracy, as they must in order to withstand summary judgment once a defendant has pointed to the absence of such evidence. <u>United Steelworkers of America v. Phelps Dodge,</u> 865 F.2d at 1542-43 (9th Cir 1989). Plaintiffs' Fifth and Sixth Causes of Action fail on that ground alone. Additionally, even if a conspiracy was identified, Plaintiffs have not demonstrated an actionable constitutional violation in any event. While Defendants offer alternative grounds for finding that said claims fail as a matter of law, including arguments both absolute and qualified immunity may apply, it was not necessary for the Court to address those arguments in deciding this matter. Therefore those arguments need not be considered, and the Court declines to do so.

IT IS SO ORDERED.

Dated: February 22, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument. E.D. Local Rule 230(g).