1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   HALEMA BUZAYAN, an individual;
     DR. JAMAL BUZAYAN, an
12   individual; NAJAT ABDALLA
     DARRAT, an individual; MOHAMED
13   BUZAYAN, by and through
     R. JAMAL BUZAYAN, as Guardian
14   Ad Litem for a minor; YOUSEF
     BUZAYAN,by and through DR.
15   JAMAL BUZAYAN, as Guardian Ad
     Litem for a minor; ALI
16   BUZAYAN, by and through DR.
     JAMAL BUZAYAN, as Guardian Ad
17   Litem for a minor,
                                          No. 2:06-cv-01576-MCE-DAD
18        Plaintiffs,

19        v.                              **MEMORANDUM AND ORDER**

20   THE CITY OF DAVIS; JAMES HYDE,
     individually and in his
21   capacity as Chief of Police of
     the City of Davis Police
22   Department; STEVEN PIERCE,
     individually and in his
23   official capacity with the
     City of Davis Police
24   Department; PHENG LY,
     individually and in his
25   capacity as an officer of the
     City of Davis Police
26   Department; BEN HARTZ,
     individually and as officer of
27   the City of Davis Police
     Department; DAVID HENDERSON,
28   individually and in his

                          1

capacity as District Attorney
for the Yolo County Office of
the District Attorney;
PATRICIA FONG, individually
and in her capacity as Deputy
District Attorney for the
Yolo County Office of the
District Attorney and member
of the Davis Police Department
Advisory Board,

      Defendants.

----oo0oo----

    Through the present action, Halema Buzayan and the Buzayan family seek damages as a result of events stemming from hit-and-run charges levied against Halema as a result of an incident which allegedly occurred in Davis, California, on June 7, 2005. Presently before the Court are cross-motions for partial summary judgment brought with respect to two of the claims brought by Plaintiffs in their Second Amended and Supplemental Complaint, filed January 3, 2008.  First, both Plaintiffs and Defendants City of Davis, James Hyde, Steven Pierce, Pheng Ly, Ben Hartz, David Henderson and Patricia Fong (collectively referred to as "Defendants" unless otherwise indicated) seek to summarily adjudicate Plaintiffs' Fourteenth Cause of Action, which asserts a violation of Plaintiff's right to privacy under Article I, Section 1 of the California Constitution.  Secondly, the same parties also seek partial summary judgment as to the Fifteenth Cause of Action, which alleges violations both of California's common law right to privacy and to statutory rights to private information protected under the California Information Practices Act, California Civil Code § 1798.53, et seq.

///

2

1   As set forth below, Defendants' Motion for Partial Summary

2   Judgment will be granted, and Plaintiffs' corresponding cross

3   motion will be denied.[1]

4

5                            **BACKGROUND**

6

7        The facts of this matter have already been discussed at

8   length in prior rulings made by the Court.   On June 7, 2005, a

9   hit and-run accident occurred in a supermarket parking lot

10  located in Davis, California.   An alleged eyewitness, Marc Rowe,

11  claims he saw a Toyota Highlander strike the rear end of a 2001

12  Mazda Protégé owned by Adrienne Wonhof-Gustafson.   Mr. Rowe also

13  provided a license plate number for the Toyota which allegedly

14  left the scene of the incident.   Later that same day, Defendant

15  Pheng Ly, an Officer with the City of Davis Police Department,

16  came to Ms. Wonhof's residence to inspect the damage to her car.

17       After running a check on the license plate number provided

18  by Mr. Rowe, Officer Ly discovered that the plate matched a 2004

19  Toyota registered to Plaintiff Jamal Buzayan and his wife.

20  Plaintiff Najat Darrat at 1131 Pistachio Court in Davis.   Officer

21  Ly drove to the Buzayan residence and ultimately found Mr.

22  Buzayan at home at about 9:30 p.m. on the evening of the

23  incident.   Ly explained that he was investigating a reported hit-

24  and-run involving a blue Toyota Highlander, license plate number

25  5GXT958, which Buzayan confirmed was his vehicle.

26

27          [1] Because oral argument was not of material assistance, the
    Court ordered both motions submitted on the briefs.   E.D. Cal.
28  Local rule 230(g).

After Mr. Buzayan asked Officer Ly if he wished to examine the vehicle, they went into the garage.  The license number of the Highlander parked there matched the number provided by the witness and had corner damage to the right front/passenger bumper.  Ms. Darrat then appeared and, while she admitted driving the Toyota to Safeway several times earlier in the day, denied being at Safeway around 6:30 p.m. when the witness observed the alleged incident.  Neither Mr. Buzayan nor Ms. Darrat had noticed the Toyota's bumper damage previously.  Officer Ly took pictures of that damage.

When Officer Ly inquired with respect to any other drivers in the household, he learned that the couple's daughter, sixteen-year-old Halema, had a driver's license.  Officer Ly then asked to speak to Halema, who denied driving the Highlander to Safeway that day.  Officer Ly made audio recordings of his interviews with the Buzayans.

According to Officer Ly, as a result of this investigation, which all appears to have occurred the evening of the incident, he concluded that Halema Buzayan had likely been driving the Highlander and collided with the Wonhof-Gustafson Mazda on June 7, 2005.  Officer Ly did not arrest Halema, however, until almost a week later, on June 13, 2005, when he returned to the Buzayan/Darrat home at about 9:40 p.m with Officer Hartz (who also has been named as a Defendant) and transported Halema to the Davis Police Station for booking, fingerprinting and questioning before releasing her to her parents with a Notice to Appear.  Halema's arrest was effectuated without any warrant.

///

4

1   Officer Ly also made audiotapes of Halema's arrest and her

2   subsequent questioning.

3       Jamal Buzayan contacted the American Civil Liberties Union

4   (ACLU) in the wake of his daughter's arrest and also complained

5   to the Davis City Council about what had happened.  Mr. Buzayan

6   further contends he filed a complaint against the Police

7   Department, which he states was rejected.  Mr. Buzayan alleged

8   that his family had been unfairly targeted by the police because

9   of their Muslim background.  Thereafter, on or about

10  September 20, 2005, Plaintiffs filed a Government Tort Claim

11  against both the City of Davis and the Davis Police Department.

12      The Buzayans' claims created an outcry within the City of

13  Davis along with extensive media interest and coverage.  Protests

14  were held in the family's honor and public calls for additional

15  police oversight were made.

16      On or about November 18, 2005, Defendant Patricia Fong, an

17  attorney with the Yolo County Office of the District Attorney,

18  filed juvenile misdemeanor charges against Halema Buzayan.  In

19  March and April of 2006, the Buzayans gave interviews to the

20  media and provided a television station, KGO-Channel 7 in

21  Sacramento, with unredacted copies of the audiotapes that had

22  been made by Officer Ly.  Portions of audiotapes were

23  subsequently disclosed by KGO.

24      On or about March 20, 2006, Defendants sought sanctions as

25  well as a media gag order against Plaintiffs in an attempt to

26  prevent all parties from communicating with the media about the

27  case.

28  ///

Plaintiffs' opposition took the position that the "important public interest in understanding how its government operates" weighed in favor of full media access to the case.  ECF No. 246, Ex. B., 5:1-12.  The opposition went on to specifically represent that "the minor and her family do not seek to require that these proceedings be kept confidential."  Id. at 1:16-18.  Yolo County Superior Court Judge Thomas Warriner subsequently denied the motion for sanctions on March 24, 2006, but ordered the parties to refrain from any further disclosures, "except that counsel for the minor and the People may disclose to the public information regarding the procedural status of the case.  Id. at Ex. C, 3:26-28.

Despite Judge Warriner's order, media interest in the matter only intensified.  Another television station, KXTV-Channel 10, quoted from the audiotapes provided to KGO, commented on the March 24, 2006 court proceedings on Defendants' media gag order request, and cited Jamal Buzayan's statement that he intended to file suit irrespective of the outcome of the criminal proceedings.  The Sacramento Bee and The Davis Enterprise newspapers ran similar stories, and a later Davis Enterprise article published on March 26, 2006 cited commentary from Plaintiffs' counsel Whitney Leigh about the March 24th hearing and his future case plans.

Given the increasing media coverage as outlined above, Defendant Fong filed a second motion, seeking sanctions against Attorney Leigh for the March 26, 2006 Davis Enterprise article and asking Judge Warriner to extend that gag order to the Buzayans.

That motion was again denied, and the very same day KGO ran another article about the case that included more excerpts from the June 13, 2005 arrest audiotape.   In addition, both The Sacramento Bee and The Davis Enterprise ran stories about the April 3rd hearing the following day.   Id. at Ex. F, pp. 8-9, 13. By that time, Halma Buzayan had appeared on local television four times.   ECF No. 43, ¶ 12.

In the wake of this additional coverage, Defendant Fong filed a third motion several days later, on April 5, 2006, seeking to vacate the gag order in its entirety on grounds of Halema's waiver of any confidentiality, and on grounds that the failure to include the Buzayans in the existing order rendered the flow of information necessarily one-sided.   ECF No. 246 at Ex. F.   Judge Warriner granted the People's request to dissolve the gag order.   Although attorney Leigh requested that the court open the proceedings entirely,[2] the Court ordered that the matter revert to the confidentiality safeguards attendant to a normal juvenile proceeding.

On April 17, 2006, the Yolo County Superior Court granted a motion to dismiss the claim against Halema on grounds that the vehicle damage at issue had already been paid for by Plaintiffs and because the City generally did not pursue criminal charges where such compensation had occurred.

///

---

[2] Leigh specifically represented at the time of the April 10, 2006 hearing that "the minor has waived her confidentiality" and went on to characterize the parties' position as "a joint request to open the proceedings." ECF No. 272, Ex. B, 16:28-17:1, 17:15-16.

About a week later, reporter Lauren Keene from The Davis
Enterprise met with Defendant Fong about the dismissed
prosecution.  According to Fong, she decided at that time that
under the circumstances the best way for the public to access
what actually happened at the time of the arrest was to release
the audio recordings themselves.  Fong met with the District
Attorney, Defendant David Henderson, and requested his approval.
According to Henderson, he approved the request because the
officers involved in the arrest were accused of misconduct and
because the Buzayans had waived confidentiality, both through
their actions as indicated above and given their specific
representations to Judge Warriner.  ECF No. 246 at Ex. L., 73:13-
74:4, Ex. M, 51:26-52:24.  Because she considered Social Security
and driver's license numbers to be confidential information, Fong
approved a request by her technical support staff to redact such
information.  She did not consider phone numbers of the names of
the other Buzayan children to be confidential information,[3] and
was concerned that over-redaction of the recordings could spawn
potential claims of manipulation.  She believed that all
confidential information had been removed before the audiotapes
were released to the Enterprise.  Id. at Ex. L, pp. 86-91, 99.

On April 28, 2006, The Davis Enterprise published an article
incorporating a discussion of the audio recordings.

///

---

[3] An April 19, 2006 Davis Enterprise article covering a
citizen's protest of Halema's arrest prosecution already had
identified as support marchers two of Halema's younger brothers
by both name and age (they were seven and twelve years of age,
respectively).  ECF No. 43, Ex. F.

Copies of the actual recordings were posted on the newspaper's website, so that the public could review the tapes and "decide for themselves whether the records supported the many (conflicting) characterizations of those involved in the June 2005 interrogations."   ECF No. 43, ¶ 7.  With respect to the newsworthiness of the underlying incidents, the Enterprise later deemed Halema Buzayan's prosecution the top local news story of 2006.  <u>Id.</u> at ¶ 3 and Ex. A thereto.

After attorney Leigh called and asked that certain information be removed, the recordings were taken off the website until re-redacted versions were prepared by the District Attorney's office.  The full recordings (except for Plaintiff Darrat's driver's license number as indicated above) were posted on <u>The Davis Enterprise</u> website for only three days.

Despite the above-described redactions, Plaintiffs filed a motion to compel compliance with the juvenile court's April 10, 2006 Order and for sanctions, asserting that the disclosure of the audio recordings in <u>The Davis Enterprise</u> violated the terms of that Order.  Plaintiffs claim that the Buzayans' unlisted phone number and address, plus the minor boys' names, ages and birth dates, had wrongfully been made public.  ECF No. 246, Ex. H.  In opposition, the District Attorney argued that the Buzayans had expressly waived confidentiality and that the juvenile court's jurisdiction had ended in any event.  <u>Id.</u> at Ex. I. Attached to the opposition was an April 26, 2006 letter from Plaintiff's counsel reiterating that "the public interest in understanding the truth about how its government works far outweighs any privacy interest in this case."  <u>Id.</u>, p. 7.

1    Plaintiffs' motion to compel compliance and for sanctions
2  was heard by Judge Warriner on May 22, 2006.  Following written
3  submissions by both Sides, Judge Warriner issued an order denying
4  the sanctions motion, without comment, on June 9, 2006.  ECF
5  No. 246 at Ex. K.  As such, there was no substantive ruling on
6  the dissemination of the recordings.  Halema Buzayan, at any
7  rate, reached the age of majority on June 27, 2006, her 18th
8  birthday.

9    Plaintiffs filed the present suit against Defendants on
10 July 14, 2006.  Several motions directed to the pleadings ensued
11 before Plaintiffs filed the currently operative pleading, the
12 Second and Supplemental Amended Complaint, in January of 2008.
13 Thereafter, two additional motions to dismiss were filed on
14 behalf of the defense as well as two separately filed motions for
15 partial summary judgment directed to various of Plaintiffs'
16 claims.  Now before the Court is Defendants' third request for
17 summary adjudication which, as stated above, targets Plaintiffs'
18 Fourteenth and Fifteenth Causes of Action, both of which are
19 directed to privacy concerns.  That motion, filed on May 24, 2012
20 and submitted on August 21, 2012, was followed by Plaintiffs' own
21 motion for summary judgment, which Plaintiffs obtained leave of
22 court to file on November 26, 2012.[4]

23 ///

24 ///

25

26    [4] The Court notes that Plaintiffs have submitted extensive
   Requests for Judicial Notice both in support of their own motion
27 (at ECF No. 270) and in opposition to Defendants' Motion (ECF
   No. 260).  Those requests, made pursuant to Federal Rule of
28 Evidence 201(b), are unopposed and are hereby granted.

Plaintiffs' motion, as indicated above, seeks summary adjudication in Plaintiffs' favor on the same two privacy-related causes of action for which the defense already sought partial summary judgment.

Factually, the privacy concerns underlying the claims that are the subject of both motions stem from the release, by Defendant Patricia Wong on behalf of the Yolo County District Attorney's Office, of the above-described audiotape recordings to The Davis Enterprise newspaper after criminal charges against Halema Buzayan were dropped.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

///
///
///
///
///
///

11

1   Rule 56 also allows a court to grant partial summary
2   judgment, or summary adjudication on part of a claim or defense.
3   See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a
4   claim... may... move... for a summary judgment in the party's
5   favor upon all or any part thereof."); see also Allstate Ins.
6   Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France
7   Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707,
8   710 (E.D. Mich. 1992).

9   The standard that applies to a motion for summary
10  adjudication is the same as that which applies to a motion for
11  summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v.
12  ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

13          Under summary judgment practice, the moving party
            always bears the initial responsibility of informing
14          the district court of the basis for its motion, and
            identifying those portions of 'the pleadings,
15          depositions, answers to interrogatories, and admissions
            on file together with the affidavits, if any,' which it
16          believes demonstrate the absence of a genuine issue of
            material fact.
17

18  Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

19  If the moving party meets its initial responsibility, the
20  burden then shifts to the opposing party to establish that a
21  genuine issue as to any material fact actually does exist.
22  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
23  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
24  253, 288-89 (1968).

25  In attempting to establish the existence of this factual
26  dispute, the opposing party must tender evidence of specific
27  facts in the form of affidavits, and/or admissible discovery
28  material, in support of its contention that the dispute exists.

12

Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
the fact in contention is material, i.e., a fact that might
affect the outcome of the suit under the governing law, and that
the dispute is genuine, i.e., the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52
(1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper
Workers, 971 F.2d 347, 355 (9th Cir. 1987).

Stated another way, "before the evidence is left to the jury,
there is a preliminary question for the judge, not whether there
is literally no evidence, but whether there is any upon which a
jury could properly proceed to find a verdict for the party
producing it, upon whom the onus of proof is imposed."  Anderson,
477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442,
448, 20 L. Ed. 867 (1872)).  As the Supreme Court explained,
"[w]hen the moving party has carried its burden under Rule 56(c),
its opponent must do more that simply show that there is some
metaphysical doubt as to the material facts.... Where the record
taken as a whole could not lead a rational trier of fact to find
for the nonmoving party, there is no 'genuine issue for trial.'"
Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the
opposing party is to be believed, and all reasonable inferences
that may be drawn from the facts placed before the court must be
drawn in favor of the opposing party.  Anderson, 477 U.S. at 255.
Nevertheless, inferences are not drawn out of the air, and it is
the opposing party's obligation to produce a factual predicate
from which the inference may be drawn.

13

1  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45

2  (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

3      In the context of allegations revolving around the public

4  disclosure of purportedly private facts, summary judgment is a

5  favored remedy since such claims implicate the defendant's free

6  speech rights.  <u>Shulman v. Group W Productions</u>, 18 Cal.4th 200,

7  228 (1998).  A plaintiff consequently bears a heightened burden

8  of showing a "high probability" of success on the merits in such

9  cases.  <u>Sipple v. Chronicle Publ. Co.</u>, 154 Cal. App. 3d 1040,

10  1046 (1984); <u>Baugh v. CBS, Inc.</u>, 828 F. Supp. 745, 752-53 (N.D.

11  Cal. 1993).

12

13                          **ANALYSIS**

14

15      The Fourteenth and Fifteenth Causes of Action are both

16  premised factually on Defendant Fong and Henderson's alleged

17  disclosure and broadcast of private information about

18  Plaintiffs.[5]

19  ///

20  ///

21  ///

22  ///

23  ─────────────────

24      [5] It should be noted that while the City of Davis Defendants
   (Defendants Ly, Hartz, Hyde and Pierce as well as the City of
25  Davis itself) have also been included as Defendants in both the
   Fourteenth and Fifteenth Causes of Action, there is no evidence
26  that any of those Defendants played any role in the
   publication/dissemination of the audio recordings that forms the
27  factual basis for those claims.  Plaintiffs have not opposed
   summary adjudication as to those Defendants on the Fourteenth and
28  Fifteenth Causes of Action.

                              14

Legally, the Fourteenth Cause of Action is predicated on privacy rights guaranteed by California State Constitution, whereas the Fifteenth Cause of Action is derived both from California's common law right to privacy and from the statutory protections afforded by the California Information Practices Act, California Civil Code § 1798.53, et seq.  Those arguments will now be addressed in turn.

**A.  Right to Privacy under the California Constitution.**

The California Constitution, at Article I, section 1, includes privacy as among the inalienable rights guaranteed to its residents.  The parameters of that constitutionally protected right were articulated by the California Supreme Court in its seminal decision of <u>Hill v. NCAA</u>, 7 Cal. 4th 1 (1994).  As an initial matter, the <u>Hill</u> court stressed that invasive conduct, to be actionable, must be "highly offensive to a reasonable person." <u>Id.</u> at 25.  Whether or not the conduct in question so qualifies is measured by 1) the likelihood of serious harm, particularly of an emotional nature; and 2) whether other factors may render the defendant's conduct inoffensive.  <u>Id.</u> at 24-27.  Additionally, as a prerequisite for invoking constitutional protection, a plaintiff "must have conducted himself.... in a manner consistent with an actual expectation of privacy" by not consenting to the allegedly invasive acts.  <u>Id.</u> at 26.

///

///

///

15

Hill summarized the elements of a constitutional invasion of privacy claim as 1) the existence of either an informational or autonomous privacy interest; 2) a reasonable expectation of privacy and whether there has been consent to activity impacting privacy; and 3) a sufficient serious invasion constituting an "egregious breach of the social norms underlying the privacy right." Id. at 35-40; see also Pioneer Electronics (USA), Inc. v. Superior Court, 40 Cal. 4th 360, 371 (2007) ("trivial invasions afford no cause of action").

As an initial matter, we consider whether the allegedly invasive conduct was "highly offensive to a reasonable person" so as to qualify for constitutional privacy protection in the first place.  The California Supreme Court, in Pioneer Electronics, supra, found that basic personal information like addresses and phone numbers does not usually so qualify, (40 Cal. 4th at 371-72), unlike personal medical history, current medical condition, or details regarding financial information.  There is no indication here, for example, that disclosure of Plaintiffs' names and addresses would link to any such information (as might happen, for example, if names and addresses were disseminated in conjunction with reports of some serious and/or loathsome illness).  See also Moghadam v. Regents of University of California, 169 Cal. App. 4th 466, 484 (one's name is "personal information" only where linked to other descriptive or identifying information like a social security number).  In the Court's view the information disclosed here was simply not of the "highly offensive" nature necessary to trigger privacy protection under the California Constitution.

1   As indicated above, interconnected with the "highly
2   offensive" prerequisite is Hill's requirement that a "serious
3   intrusion" occur consisting of an "egregious breach of the social
4   norms underlying the privacy right.  Hill, 7 Cal. 4th at 37.
5   Again, under the circumstances this requirement cannot be
6   satisfied in the present matter.  See, e.g., Puerto v. Superior
7   Court, 158 Cal. App. 4th 1242, 1253-54 (2008) (disclosure of
8   witnesses' addresses and phone numbers not serious invasion
9   within meaning of Hill). The final factor bearing on the "highly
10  offensive" calculus, according to Hill, is the purpose of the
11  disclosure.  Hill, 7 Cal. 4th at 26.  There is no evidence that
12  the prosecutors, in releasing the audiotapes, had any desire to
13  injure Plaintiffs as opposed to exonerating officers Ly and Hartz
14  of any potential misconduct.

15  Additionally, even if any intrusion did occur, no
16  constitutional violation occurs where a competing state interest
17  warrants disclosure.  Here, as already indicated, Plaintiffs'
18  counsel himself stated that the "public interest in understanding
19  how its government works far outweighs any privacy interest.  ECF
20  No. 246, Ex. I, p. 7.  Indeed, given the widespread public
21  interest and media coverage afforded Halema's arrest and
22  subsequent prosecution, it can hardly be disputed that the events
23  in question were newsworthy.

24  Finally, and perhaps most importantly, it cannot be said
25  that Plaintiffs conducted themselves in a manner consistent with
26  a privacy interest on their part in any event.  Jamal Buzayan
27  publicly identified his family's address in a public City Council
28  meeting the day after his daughter was arrested.

ECF No. 47-8 (June 14, 2005 City Council Meeting) at 9:40.
Plaintiffs' subsequent 2005 government tort claim filing, a
public record, also contained names and addresses for the Buzayan
family.  ECF No. 25, p. 2. In addition, as enumerated above,
Plaintiffs themselves released the subject audiotapes to the KGO-
Channel 7 in 2006, and stories that thereafter were aired
mentioned Plaintiffs' names, Halema's age, her school, as well as
Jamal Buzayan's occupation and place of employment along with the
facts pertinent to the incident.  Additionally, just a week
before the audio recordings' release by Defendants, <u>The Davis
Enterprise</u> featured a photograph of the Buzayan boys identified
by names and ages in their coverage of a public protest march in
which the boys participated.  ECF No. 43 at Ex. F.  Finally, and
perhaps most importantly, as already enumerated above,
Plaintiffs' counsel specifically represented to juvenile court
that "full media access to the case" was warranted given its
"important public interest" along with an unequivocal statement
that "the minor and her family do not seek to require that [the]
proceedings be kept confidential."  ECF No. 246, Ex. B, 5:10-12;
1:16-18.  Taken as a whole, these actions in no way evince an
"expectation of privacy" consonant with a lack of consent to the
allegedly private information being disseminated.[6]  To the
contrary, Plaintiffs actively sought out publicity themselves.

---

[6] While Plaintiffs appear to opine that release of their
unlisted telephone number led to family members in Libya being
harassed and/or tortured by the Qaddafi regime, any causal link
in that regard amounts to little more than sheer speculation.
There is also no showing that Defendants should or could have
been aware of any such concern; indeed, as stated above,
Plaintiffs' own actions are not consistent with any privacy
concern on their behalf.

It also bears mention that the juvenile court itself, in its June 9, 2006 ruling on Plaintiffs' motion for sanctions for dissemination of the audiotapes to The Davis Enterprise, denied the sanctions request without comment.

In sum, because the undisputed facts, taken as a whole, show no reasonable expectation of privacy under the circumstances present here, the question of invasion can be decided as a matter of law. Defendants are accordingly entitled to summary adjudication as to the Fourteenth Cause of Action, which alleges a violation of privacy rights guaranteed under the California Constitution.

**B.   State Common Law Privacy and Liability under the California Information Practices Act.**

Plaintiffs' Fifteenth Cause of Action, as stated above, encompasses both common law privacy and the disclosure of private information in violation of California Civil Code § 1798.53 (which is part of Article 9 of California Information Practices Act at § 1798, et seq.). Under either alternative, Plaintiffs must show that they previously kept private the information at issue. See, e.g., Sipple v. Chronicle Publ. Co., 154 Cal. App. 3d at 1047 ("there is no [common law] liability where the defendant merely gives further publicity to information about the plaintiff which is already public"); Cal. Civ. Code § 1798.53 (information to be protected must be "not otherwise public"). Therefore the Fifteenth Cause of Action fails for the same reasons already articulated above with respect to constitutionally based privacy.

1    Newsworthiness is also a defense to both common law and

2  § 1798.53 liability. <u>Shulman v. Group W Productions</u>, 18 Cal.4th

3  at 214 (describing newsworthiness as "a complete bar to common

4  law liability"); <u>Alim v. Superior Court</u>, 185 Cal. App. 3d 144, 50

5  (1986) (claims under § 1798.53 subject to same special defenses

6  as common law privacy torts, including newsworthiness).

7  Significantly, too, it is the plaintiff's burden to prove that a

8  publication is not newsworthy.  <u>Shulman</u>, 18 Cal. 4th at 215.

9  Plaintiffs have not and cannot meet that burden.  Instead, as

10  stated above, <u>The Davis Enterprise</u> deemed the incidents

11  underlying this lawsuit as the top local news story of 2006.

12    With respect to § 1798.53 in particular, that claim fails

13  for yet another fundamental reason.  Section 1798.53 provides as

14  follows:

15    "Any person, **other than an employee of the state or of**
    **a local government agency acting solely in his or her**

16    **official capacity,** who intentionally discloses
    information, not otherwise public, which they know or

17    should reasonably know was obtained from personal
    information maintained by a state agency or from

18    "records" within a "system of records" (as these terms
    are defined in the Federal Privacy Act of 1974 (P.L.

19    93-579; 5 U.S.C. 552a) maintained by a federal
    government agency, **shall be subject to a civil action,**

20    **for invasion of privacy,** by the individual to whom the
    information pertains.

21

22  Cal. Civ. Code § 1798.53 (emphasis added).

23    As the language of the statute makes clear, its application

24  specifically exempts any employee of a state or local agency

25  "acting solely in his or her official capacity."

26  ///

27  ///

28  ///

20

Here, while there may be a dispute about whether Defendants Fong and Henderson acted as a state or local government actor in releasing the audiotapes, there is no dispute that the disclosure came within one of those two alternative capacities. Additionally, Plaintiffs have proffered no evidence that Fong and Henderson acted in anything other that their official roles as prosecutors as doing so.  The evidence indicates that Fong went to the district attorney himself, Defendant Henderson, to request his authorization to release the audiotapes, and that Henderson approved that request because the officers were accused of misconduct and because the Buzayans had, by all indications, waived confidentiality in the course of the juvenile proceedings. Plaintiffs have produced nothing to suggest that either Fong's request or Henderson's approval occurred outside their official roles as prosecutors.[7]

While Plaintiffs contend that Fong and Henderson's actions were not official in nature because they violated juvenile confidentiality rules, that claim also appears misplaced. Audiotapes pertaining to a juvenile prosecution are entitled to statutory confidentiality only to the extent such audiotapes are admitted into evidence.  See California Rule of Court 5.552(a)(6) (limiting the inclusion of audiotapes in the juvenile case to those tapes "admitted into evidence at juvenile court hearings").

_____

[7] Plaintiffs' moving papers in support of their own cross-motion for partial summary judgment appear to virtually concede this point in stating that "Defendants Fong and Henderson, as part of their official duties as employees of the Yolo County District Attorney's Office, undertook steps to ensure vast dissemination of the [subject] information."  ECF No. 269, 4:4-6.

More generally, documents contained in a juvenile case file are entitled to confidentiality protection if they have been filed with the court.  <u>See</u> Cal. Welf. & Inst. Code § 827(e).  Here, there has been no showing that the audiotapes were admitted to the evidence or were ever filed with the Court.  Plaintiffs have made no attempt to show that these prerequisites were met.  It must also be mentioned that in summarily denying Plaintiff's post-disclosure motion, Judge Warriner declined to issue any sanctions against Defendants for disseminating the audiotapes after the juvenile proceedings had been concluded.

Because the undisputed facts show that Plaintiffs cannot state a viable claim under either common law invasion of privacy or with regard to any violation of the California Information Practices, summary adjudication is also granted as to the Fifteenth Cause of Action.

### C.  Applicable Immunities.

Even assuming Plaintiffs could otherwise state a claim under either the Fourteenth or the Fifteenth Causes of Action, which the Court has found they cannot, Defendants assert they are immunized from potential liability in any event under either California Government Code §§ 820.2 or 821.6.

Section 820.2 immunizes public employees like Defendants Fong and Henderson from liability for injuries resulting from their acts or omissions, where such acts or omissions arise from the exercise of discretion.

///

1  Section 820.2 applies to all injuries stemming from discretionary

2  decisions, except as otherwise provided by statute.  Caldwell v.

3  Montoya, 10 Cal. 4th 972, 980 (1995).

4       As Defendants assert, Henderson decided to publish the audio

5  when requested to do so by Defendant Fong.  He states he did this

6  in order to allow the facts of the arrest, which had engendered

7  significant public debate and media exposure, to be established

8  and to permit Defendants Ly and Hartz to defend their

9  reputations.  As indicated above, Henderson's decision was also

10 predicated on the Buzayans' own apparent waiver of any

11 confidentiality concerns, both as directly expressed by their

12 counsel in court and as evidenced by Plaintiffs' own conduct in

13 widely discussing the case with the media.  The weighing of these

14 factors in formulating a decision falls within the prosecutors'

15 discretion since balancing such competing issues comprises "the

16 very essence of the exercise of discretion."  See Thompson v.

17 County of Alameda, 27 Cal.3d 741, 748-49 (1980).  Therefore, the

18 decision whether to perform an optional act like releasing the

19 audiotapes is discretionary, even though the means by which to

20 implement that decision may well be ministerial.  See, e.g.,

21 Green v. City of Livermore, 117 Cal. App. 3d 82, 89 (1981).

22      While Plaintiffs attempt to argue that Defendant Wong's

23 decision about what to redact from the recordings was accordingly

24 ministerial in nature and not subject to immunity, the Court

25 rejects that distinction.

26 ///

27 ///

28 ///

23

Despite their argument to the contrary, the gravamen of
Plaintiffs' claim lies not in what was or was not redacted but
rather with respect to the Prosecutor's alleged misconduct in
releasing any audiotapes related to the arrest without prior
juvenile court approval in the first place.  In Harmston v. City
and County of San Francisco, 2007 WL 2814596 (N.D. Cal. 2007),
the Northern District confirmed § 820.2 immunity with respect to
a defamation claim levied against the Chief of Police by
disciplined officers, explaining that the Chief's decision to
speak to the press about plaintiffs qualifies as a
"discretionary, policy-making decision" in the face of a "novel
and potentially volatile situation that could have had an impact
on departmental relations with the community as well as the
department's public image." Id. at *6.  This Court believes the
logic of Harmston is equally applicable to the case now before it
and concludes that Defendants' decision to release the audiotapes
qualifies as a discretionary decision subject to immunity under §
820.2 even if Plaintiffs could otherwise establish any claim
rooted in an invasion of privacy.

Having established that § 820.2 confers immunity under the
facts of this matter, we now turn to the second immunity
provision cited by Defendants, California Civil Code § 821.6.
That statute provides that "a public employee is not liable for
injury caused by his instituting or prosecuting any judicial...
proceeding within the scope of his employment, even if he acts
maliciously and without probably cause." Cal. Civ. Code
§ 821(6).

///

24

1    Significantly for purposes of the present matter, California

2    prosecutorial immunity under § 821.6 extends to media statements

3    made by public officers like Defendants Fong and Henderson.

4    Ingram v. Flippo, 74 Cal. App. 4th 1280, 1292-1293 (1990).  As

5    already discussed, Fong and Henderson are unquestionably public

6    employees and there is no evidence that they acted outside the

7    scope of their job duties in releasing the subject audiotapes to

8    The Davis Enterprise.

9        Plaintiffs argue that prosecutorial immunity should

10   nonetheless not attach here because the audiotapes were released

11   after the criminal charges against Halema were dismissed.   In

12   both Ingram and Citizens Capital Corp. v. Spohn, 133 Cal. App. 3d

13   887 (1982), however, the media statements were made after the

14   completion of the criminal investigation, and in a third case,

15   Cappuccio Inc. v. Harmon, 208 Cal. App. 3d 1496 (1989), the

16   public announcement objected to was released after criminal

17   prosecution had been concluded.  Section 821.6 immunity was

18   nonetheless found to apply in all three instances.  As the Ingram

19   court explained, "the test of immunity is not the timing of the

20   publication but whether there is a causal relationship between

21   the publication and the prosecution process.  Ingram, 74 Cal.

22   App. 4th at 1292-93.[8]

23

24        [8] The Court recognizes that another case, Ogborn v.
     Lancaster, 101 Cal. App. 4th 448 448, 463 (2002) comes to a
25   different conclusion in finding that § 821.6 does not apply to a
     tort alleged to have occurred after completion of a judicial or
26   administrative hearing.  The Court cited Ogborn favorably in
     determining that it could not say, as a matter of law in the
27   context of a motion to dismiss, that a post-prosecution
     disclosure would necessarily be subject to § 821.6 immunity.
28                                                      continue...

                                   25

In the present matter, the disclosure by the prosecutors of the subject videotapes, even though occurring after formal dismissal of the charges against Halema, nonetheless was part and parcel of the prosecution process as a whole.  A causal connection between the dissemination and the prosecution itself was unquestionably present.  This determination is underscored by the key role media disclosure carried throughout the proceedings (in the form of numerous motions) as well as the fact that legal maneuvers about that disclosure, in the form of Plaintiffs' request that sanctions be levied against Defendants after the audiotapes were released, continued even after the formal charges against Halema had been dropped.

Finally, it bears noting that the very purpose of prosecutorial immunity, "to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits," is construed broadly by California courts in furtherance of that purpose.  Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1048 (2007).  With this broad maxim of construction in mind, and as Defendants advocate, prosecutorial duties do nor arise solely upon the filing of charges or end with the termination of those charges, but instead also encompass related actions occurring both before and after the actual prosecution.

---

[8]...continue

After examining all relevant case law in this area, however, the Court believes that the weight of authority is counter to Ogborn, and consequently the Court believes that reliance at this time on Ogborn is misplaced.  Significantly, as Defendants point out, Ogborn's rationale has not been followed in any subsequent state or federal decision.

1  Consequently the Court finds that the immunity afforded by

2  § 821.6 also attaches to the audiotape disclosures challenged by

3  Plaintiffs in the Fourteenth and Fifteenth Causes of Action.

4

5      **G.  Privilege under Civil Code § 47(a).**

6

7      In addition to the two statutory immunities discussed above,

8  Defendants further claim that the privilege afforded by

9  California Civil Code § 47(a) also precludes Plaintiffs from

10  proceeding with the Fourteenth and Fifteenth Causes of Action

11  against them.  Section 47(a) protects publications which might

12  otherwise be tortious from liability if a public official makes

13  them in the "proper discharge" of his duties.  Except for

14  malicious prosecution, the privilege afforded by § 47(a) is

15  virtually absolute.  Ribas v. Clark, 38 Cal.3d 355, 364 (1985).

16  Significantly for purposes of the present case, similar

17  privileges have also been specifically extended to statutory and

18  constitutional violations arising from the disclosure of juvenile

19  court records.  See Jacob B. v. County of Shasta, 40 Cal.4th 948,

20  957-61 (2007).[9]

21  ///

22  ///

23  ///

24  ///

25

26      [9] While Jacob B. on its face involves the privilege
    contained in § 47(b), which only contemplates publications made
27  in the course of actual litigation, there is no reason why the
    logic of the decision does not apply equally to a case like the
28  present one involving § 47(a).

1 Because <u>Kilgore</u> makes it clear that a public prosecutor's

2 duties communicating with the press and public about criminal

3 investigations and/or prosecutions (30 Cal.3d at 781-782),

4 because we have already concluded above that the timing of the

5 disclosures does not preclude their proper relation to the case,

6 and because there is no evidence that Defendant's decision to

7 release the audiotapes was pursuant to anything other than their

8 official capacities, the Court finds that the privilege set forth

9 in California Civil Code § 47(a) is yet another reason that

10 summary adjudication in Defendants' favor as to the Fourteenth

11 and Fifteenth Causes of Action must be had.

12

13 **CONCLUSION**

14

15 For the reasons set forth above, Defendants' Motion for

16 Partial Summary Judgment (ECF No. 244) is GRANTED.  The

17 Fourteenth and Fifteenth Causes of Action are hereby dismissed.

18 Plaintiffs' Cross-Motion for Partial Summary Judgment (ECF

19 No. 268), which seeks judgment in Plaintiffs' favor on the same

20 two causes of action, is accordingly DENIED.

21 IT IS SO ORDERED.

22 Dated: February 22, 2013

23

24

25 _____

26 MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT JUDGE

27

28